IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

M.W. and L.W.,                          §
                                        §
        Plaintiffs,                     §
                                        §
v.                                      §        Civil Action No. 3:24-CV-600-N
                                        §
HEALTH CARE SERVICE                     §
CORPORATION,                            §
                                        §
        Defendant.                      §

**MEMORANDUM OPINION AND ORDER**

        This Order addresses Defendant Health Care Service Corporation's (also known as

Blue Cross Blue Shield of Texas, "BCBSTX") and Plaintiffs M.W. and L.W.'s

(collectively "Plaintiffs") cross-motions for summary judgment [54, 59].  Because

Plaintiffs produced sufficient summary judgment evidence that BCBSTX did not

substantially comply with section 1133 of Employee Retirement Income Security Act of

1974 ("ERISA"), the Court denies BCBSTX's motion for summary judgment and grants

Plaintiffs' motion for summary judgment on this issue. The Court does not reach the Parity

Act claim, orders a remand to BCBSTX, and stays the case pending the remand.

MEMORANDUM OPINION & ORDER – PAGE 1

## I. ORIGINS OF THE MOTIONS

This case arises from a dispute about M.W.'s health insurance coverage for L.W.[1] L.W. is M.W.'s child and a beneficiary of the insurance plan. Def.'s Mot. Summ. J. 1; Pls.' Mot. Summ. J. 3. L.W. stayed at Innercept, a residential treatment center ("RTC"), intermittently from 2021 to 2022. *See* Joint App. 343–563; Def.'s Mot. Summ. J. 2. Innercept submitted a claim to BCBSTX seeking coverage of L.W.'s stay at the RTC, and BCBSTX voided authorization. Def.'s Mot. Summ. J. 4; Pls.' Mot. Summ. J. 6. This lawsuit is about whether BCBSTX complied with statutory procedural requirements when it voided authorization.

### A. Relevant Health Plan Provisions

Several sections of the health insurance plan ("Plan") are relevant to this case. First, the Plan defines the term "residential treatment center" as follows:

> **Residential Treatment Center** means a facility setting (including a Residential Treatment Center for Children and Adolescents) offering a defined course of therapeutic intervention and special programming in a controlled environment . . . . *Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Chemical Dependency. BCBSTX requires that any facility providing Mental Health Care and/or a Chemical Dependency Treatment Center must be licensed in the state where it is located*, or accredited by a national organization that is recognized by BCBSTX as set forth in its current credentialing policy, and otherwise meets all other credentialing requirements set forth in such policy.

Joint App. 305 [69] (emphasis added).[2]

---

[1] For the purposes of this motion, BCBS admits that the health insurance plan qualifies as a "plan" as defined by ERISA. Def.'s Mot. Summ. J. 1. It does not argue that L.W. was not a "participant" in the insurance plan as defined by 29 U.S.C. § 1002(7).

[2] The parties submitted a joint appendix in support of their motions for summary judgment and responsive briefings.

Next, the Plan states that members "have the right to seek and obtain a review by BCBSTX of . . . any determination of a request for Preauthorization, or any other determination" under the Plan. *Id*. 298. If "the claim is denied in whole or in part, you will receive a written notice from BCBSTX with the following information, if applicable," including the "reasons for the determinations," "reference to the benefit Plan provisions" the determination is based on, and an "explanation of BCBSTX's internal review/appeals" processes. *Id*.

Finally, the Plan provides coverage for the following categories of "Eligible Expenses: Inpatient Hospital Expenses, Medical-Surgical Expenses, Extended Care Expenses, special provisions expenses, and pharmacy expenses." *Id*. at 300. The plan excludes from coverage "[a]ny services or supplies not defined as Eligible Expenses in this Plan." *Id*. at 303.

### B.  BCBSTX Voids Authorization for the RTC

BCBSTX sent M.W. approximately nineteen different explanations of benefits ("EOB"). The EOBs were in response to claims for L.W.'s stay at Innercept and included one of three explanations, summarized below.

First, on May 5, 2021, BCBSTX informed M.W. by an EOB that "this service [at Innercept] is excluded under your Health Care Plan." Joint App. 306. Second, on September 9, 2021, BCBSTX sent another EOB stating that it "asked your health care provider for more information," and that it would "complete [M.W.'s] claim when this information is received." *Id*. at 343. Third, on October 1, 2021, BCBSTX followed up

MEMORANDUM OPINION & ORDER – PAGE 3

with an EOB stating that "[c]overage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines." *Id*. at 354.

Each EOB included a similar chart showing the amount billed for "Residential Treatmnt [sic]." *E.g.*, *id*. The EOB letters stating coverage "has been denied," or that Innercept's services were "excluded" show that M.W. was completely responsible for the cost based on the "Your Total Cost" column. *E.g.*, *id*. at 354, 365. Additionally, each EOB included an explanation of BCBSTX's appeal process, how to file a complaint, and how to request a review by and Independent Review Organization. *E.g.*, *id*. at 323.

### C. Plaintiffs' Appeal

On August 20, 2021, M.W. internally appealed BCBSTX's decision to void authorization. *Id*. 581. M.W. sent BCBSTX a formal letter requesting an internal appeal. *Id*. This letter provided that, on February 24, 2021, Innercept called BCBSTX for "authorization" for L.W.'s care.[3] *Id*. BCBSTX verbally requested a copy of Innercept's license and received a copy the same day. *Id*. Innercept told BCSBTX that it would inform M.W. of this decision, and BCBSTX itself did not contact Plaintiffs. *See id*. at 595. On March 2, 2021, BCBSTX left a voicemail for Innercept stating it could not authorize services because Innercept does not offer "24 hour nursing." *Id*. at 581. M.W.'s appeal

---

[3] The parties do not contest that this phone call occurred. However, whether this phone call is part of the administrative record for section 1133's purposes is analyzed later in this Order.

MEMORANDUM OPINION & ORDER – PAGE 4

stated that BCBSTX violated ERISA's procedural requirements and that the terms of the plan violate the Parity Act. *Id.* at 582, 586. M.W. detailed BCBSTX's failure to provide a written denial with specific reasons and references to specific plan provisions on which the determination was based, in accordance with its own policy and with ERISA. *Id.* at 583–584. Subsequently, BCBSTX sent two more EOBs denying coverage. *Id.* at 317, 354.

### D.  BCBSTX Phone Call

On January 19, 2022, a health care advocate on behalf of Plaintiffs, spoke with BCBSTX over the phone, disputing the decision to void authorization for the RTC. *Id.* at 595. BCBSTX explained that the "authorization and appeal were denied" because Innercept "is not licensed to perform the requested services as the facility must have a 24-hour nursing [sic] to qualify and be reviewed." *Id.* at 595. The advocate asked if BCBSTX planned on sending a written letter informing M.W. of this decision. *Id.* BCBSTX's representative stated she "would submit a request for a letter to be sent." *Id.* She added, "denial letters are not sent for license verification, because BCBSTX are [sic] not denying services for the level of care, just the facility [sic] does not meet the requirements for the level of care." *Id.* The record does not include a letter matching this description.

### E.  Plaintiff's Complaint with TDI

M.W. then filed a complaint with the Texas Department of Insurance ("TDI") on March 18, 2022. *Id.* at 564. TDI notified BCBSTX it must provide a written response to M.W.'s complaint. *Id.* BCBSTX wrote to TDI on April 1, 2022 summarizing the facts

MEMORANDUM OPINION & ORDER – PAGE 5

and providing a response. *Id*. 594.  First, BCBSTX stated that the February 24, 2021 phone call regarding Innercept's authorization "was not a denial, but rather a summary of what was determined during the review of the facility records."  *Id*. at 595.  Thus, the authorization request was "voided."  *Id*.  BCBSTX explicitly states it did not make a clinical determination or deny the claim based on medical necessity.  *Id*.

BCBSTX then states it received M.W.'s appeal but did not "complete[] an appeal because there was no denial" for the authorization.  *Id*.  Instead, BCBSTX "voided" it because the request "did not met the guidelines outlined in the member's plan."  *Id*.  However, M.W.'s plan does not define or otherwise refer to void.

### F.  The Procedural Posture of this Litigation

Subsequently, Plaintiffs filed suit in this Court, asserting claims under the ERISA, 29 U.S.C. §§ 1002, *et seq*, and the Mental Health Parity and Addiction Act ("Parity Act"), 29 U.S.C. § 1185(a).  Plaintiffs allege that (1) BCBSTX committed procedural violations in violation of 29 U.S.C. § 1133 and that (2) BCBSTX's policy is more restrictive for mental health benefits than substantially all medical and surgical benefits, thus wrongfully denying him benefits under section 1185(a).  BCBSTX and Plaintiffs both moved for summary judgment.

## II.  LEGAL STANDARD

### A.  Motion for Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In

MEMORANDUM OPINION & ORDER – PAGE 6

making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have

submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  BCBSTX DID NOT SUBSTANTIALLY COMPLY
### WITH SECTION 1133'S REQUIRED PROCEDURES

Plaintiffs assert BCBSTX committed two procedural violations under section 1133. Section 1133 of ERISA provides that an employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  A court evaluates challenges to ERISA procedures under a "substantial compliance" standard.  *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006).  "This means that '[t]echnical noncompliance' with ERISA procedures 'will be excused' so long as the purposes of section 1133 have been fulfilled."  *Id*. at 393 (quoting *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000)).

The Court examines whether BCBSTX substantially complied with each subsection in turn.  The Fifth Circuit has held that appropriate standard is *de novo* review, "regardless of whether the denial is based on factual determinations or interpretation of the plan's language."  *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021).

MEMORANDUM OPINION & ORDER – PAGE 8

### A. Plaintiffs Produced Sufficient Summary Judgment Evidence to show BCBSTX did not Substantially Comply with Section 1133(1)

BCBSTX did not provide Plaintiffs adequate notice of its denial in writing. First, the Court finds that voiding authorization is functionally equivalent to a denial. The Plan does not define what "voiding" authorization is. Nor does it differentiate between denying and voiding a claim in its "Claim Filing" procedures. The Claim Determinations provision explicitly provides for "the right to seek and obtain a review" for Preauthorizations. Joint App. 298. Additionally, the EOBs sent to Plaintiff included the words "denied" and attached instructions for filing an appeal. *E.g.*, *id.* at 354. Thus, regardless of whether the February phone call between Innercept and BCBSTX constituted a denial, BCBSTX denied Plaintiffs' claim of coverage.

Next, the Court analyzes whether BCBSTX's denial of coverage was procedurally sufficient. To comply with section 1133, BCBSTX's review must have been based on a "meaningful dialogue between the beneficiary and administrator." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009) (internal quotation marks omitted). This "meaningful dialogue" has been described as "an ongoing, good faith exchange of information to ensure that the terms of the plan are applied accurately and the benefits are dispensed fairly." *Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1223 (10th Cir. 2023) (internal quotation marks omitted). Specifically, when benefits are first denied, the plan administrator must provide "[t]he specific reason or reasons for the adverse determination" and "the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(i)–(ii).

MEMORANDUM OPINION & ORDER – PAGE 9

Plaintiffs produced sufficient summary judgment evidence to show BCBSTX did not engage in meaningful dialogue with M.W. when it denied authorization. BCBSTX asserts that it explained its reasoning through third parties, phone calls, and EOBs. *See generally* Def.'s Mot. Summ. J. 4–7, 14–15. Thus, it argues it substantially complied with section 1133. However, the Court finds sufficient evidence creating a genuine dispute as to whether its actions were more than "technical" noncompliance.

BCBSTX cannot rely on oral communications to argue it substantially complied with section 1133(1). First, BCBSTX offers its January phone call with Plaintiffs' health care advocate. Def.'s Mot. Summ. J. 4–7; Joint App 595. Second, BCBSTX offers the February phone call with RTC staff. Def.'s Mot. Summ. J. 5; Joint App. 595. It asserts these communications notified Plaintiffs that BCBSTX did not authorize coverage and that it did so because the RTC lacked 24-hour onsite nursing and the proper license. Def.'s Mot. Summ. J. 5. However, neither of these is adequate notice under section 1133. Both forms of communication are phone calls and, thus, not a "writing."[4] *See* 29 U.S.C. § 1133(1).

Additionally, BCBSTX offers in its response to TDI, that Plaintiffs' complaint to TDI includes BCBSTX's two reasons for denial. Def.'s Mot. Summ. J. 4–7. This, it argues, is proof that Plaintiffs understood its denial rationale. *Id*. However, this is not evidence of *how* BCBSTX informed Plaintiffs of its rationale — the very issue section

---

[4] The summary judgment evidence available of this phone call is in the form of a written summary of what the BCBSTX representative said. This writing is documented in a BCBSTX letter responding to TDI discussed below. Thus, that phone call is not a writing.

MEMORANDUM OPINION & ORDER – PAGE 10

1133 addresses.  Additionally, BCBSTX's response was between BCBSTX and third parties, not Plaintiffs.  Furthermore, BCBSTX failed to respond to Plaintiffs' appeal, thereby prompting Plaintiffs' external complaint to TDI in the first place.  Joint App. 564–68, 594–96.  For this reason, BCBSTX's response to TDI also does not qualify as a writing under section 1133.  *See Doe v. Deloitte LLP Group Insurance Plan*, 767 F. Supp. 3d 106, 114–15 (S.D.N.Y. 2025); *see also Lafleur*, 563 F.3d at 154 (internal citations omitted) (holding the "test considers all communications *between an administrator and plan participant*") (emphasis added).  Thus, BCBSTX's correspondence with TDI is not adequate notice to Plaintiffs under section 1133.

Finally, BCBSTX sent Plaintiffs written EOBs denying the RTC claim.  *E.g.*, Joint App. 306, 317.  But the EOBs do not provide a specific reason why BCBSTX denied coverage.  *Id*.  It simply says "[c]overage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines." *Id*. at 317.  The denial letters had the same language, and failed to state "[t]he specific reason or reasons for the adverse determination" and "the specific plan provisions on which the determination is based" in violation of 29 C.F.R. § 2560.503-1(g)(1)(i) and (ii).  *Dwyer*, 115 F.4th 650 (collecting cases); *Lafleur*, 563 F.3d at 156 ("Although these various reasons for denial are all generally based on the Custodial Care exclusion, the lack of specificity did not give [Plaintiff] the fair notice contemplated by the ERISA regulations.").  The other EOBs

MEMORANDUM OPINION & ORDER – PAGE 11

provide nothing more to Plaintiffs. *E.g.*, Joint App. 332, 343; *see also Doe*, 767 F. Supp. 3d at 114 (stating that even if the denial is "technically accurate" the denial letters "gave only the barest explanation" and "did not engage with Plaintiff's actual claim"). Therefore the EOBs also do not provide adequate written notice.

Under the Fifth Circuit's standard, even taking all of the communications together, BCBSTX did not substantially comply with section 1133. BCBSTX admits its "procedure was to issue [an EOB] and not a letter," and that it did not send anything else in writing, to Plaintiffs. Joint App. 595; Def.'s Mot. Summ. J. 5. BCBSTX still did not comply even after Plaintiffs requested its denial in writing during the January phone call. *See id*. at 651 ("United simply refused Mr. Dwyer's efforts to have a meaningful dialogue about the problem.") Because the only qualified writings are the EOBs, and the EOBs lacked the specific reasons and references to relevant plan provisions, BCBSTX failed to engage in meaningful dialogue with Plaintiffs regarding its denial of coverage]. *See Dwyer v. United Healthcare Ins. Co.*, 115 F.4th 640, 649–50 (5th Cir. 2024). Therefore, the Court finds that Plaintiffs produced sufficient summary judgment evidence to show that BCBSTX did not substantially comply with section 1133(1).

### B.  Plaintiffs Produced Sufficient Summary Judgment Evidence to show BCBSTX did not Substantially Comply with Section 1133(2)

BCBSTX did not provide a "full and fair review" of Plaintiffs' claim. The Fifth Circuit standard for assessing a section 1133(2) claim is whether the ERISA fiduciary employed "full and fair review" of the claim as required by law. *Id.* § 1133(2); *LaFleur,* 563 F.3d at 154. The same substantial compliance test for all communications between an

administrator and plan participant applies to section 1133(2). *Lafleur*, 563 F.3d at 154 (internal citations omitted). However, "[a]ll communications may include oral communications." *Id*. (internal citations omitted). Fifth Circuit precedent upholds administrator decisions that require "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Id*. (internal citations omitted).

Additionally, procedures "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" unless several procedural requirements are met. *Id*. Three are relevant:

> (ii) a review must not afford deference to the initial adverse benefit determination" and may not be "conducted" by the same person who made the initial determination
> . . .
> (iv) the claims procedure must "[p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination;
> (v) the healthcare professional consulted in an appeal may not be the same individual who was consulted in connection with the [original determination].

29 C.F.R. § 2650.503-1(3)(ii).

The Court holds that BCBSTX did not provide a full and fair review. First, the Court must determine what is included in the administrative record. Then, based on the administrative record, the Court analyzes whether BCBSTX's procedures complied with section 1133(2).

MEMORANDUM OPINION & ORDER – PAGE 13

The Court excludes BCBSTX's licensing argument from the administrative record. BCBSTX cannot rely on its argument that Innercept did not qualify as a licensed facility because it did not give adequate notice to Plaintiffs it denied authorization for this reason. To permit BCBSTX to now assert that basis for denial when it declined to assert it in the administrative level[5] would violate the purpose of ERISA's written notice requirement. When BCBSTX elected not to raise the alleged lack of proper licensing at the administrative level, it effectively "doubled down" on the stated basis of its administrative denial. *Chavez v. Standard Ins. Co.*, 2020 WL 6255407, at *2 (N.D. Tex. 2020) (finding the administrator waived its eligibility argument when it did not give notice to the claimant), *reversed on other grounds by Martinez v. Standard Ins. Co.*, 2021 WL 4592430 (5th Cir. 2021) (unpub).

BCBSTX is not entitled to offer *post hoc* arguments at all; it is limited to the arguments it made at the administrative level, which were none. *See Robinson*, 443 F.3d at 397 n.4; *Dwyer*, 115 F.4th at 653. Excluding this argument also adheres to the Fifth Circuit's standard, because Plaintiffs lacked the opportunity to address this evidence and the decision-maker would not have had the chance to consider their evidence, such as the RTC's license, on this issue. *See Lafleur*, 563 F.3d at 154. The only grounds for denial, then, are whether Innercept had proper staffing.

---

[5] The Court notes that Plaintiffs submitted a copy of Innercept's license to BCBSTX the day BCBSTX considered authorization, February 24, 2021, over the phone. Plaintiffs submitted the license and a copy of the state of Idaho's response that a license is not required for young adult programs. Joint App. 617.

MEMORANDUM OPINION & ORDER – PAGE 14

Based on the remaining administrative record, the Court holds that BCBSTX's procedures did not substantially comply with section 1133(2). BCBSTX did not conduct an appeal on the staffing issue. Joint App. 595. Plaintiffs filed an appeal on August 20, 2021, according to the Plan's appeal terms. *Id*. at 581. They argued that BCBSTX violated the Plan terms, ERISA, and the Parity Act. *Id*. But BCBSTX states that it does not review appeals when it voids authorization. *Id*. at 595. Instead, its "procedure was to issue [an EOB]." *Id*. However, this contradicts the Plan's terms. The Plan provides clear review procedures that BCBSTX must follow when it denies preauthorization. *Id*. at 298 ("You have the right to seek and obtain a review by BCBSTX of any determination . . . of a request for Preauthorization."). Therefore, BCBSTX did not substantially comply with section 1133(2)'s requirements because it did not conduct an appeal, that is "the ERISA fiduciary engaged in no dialogue at all." *Dwyer*, 115 F.4th at 649–51.

Thus, the Court concludes that Plaintiffs were not afforded an opportunity to address the accuracy and reliability of the evidence. *See Lafleur*, 563 F.3d at 154. Even if BCBSTX did reexamine Plaintiffs' materials, BCBSTX has not presented evidence that it assigned a different reviewer, identified experts, or that the appellate healthcare professional was different, as required by 29 C.F.R. § 2650.503-1(3)(ii). Looking at all of the communications together, the Court cannot know what evidence the decision-maker relied upon and whether the decision-maker considered the evidence presented by both parties. *See Lafleur*, 563 F.3d at 154.

MEMORANDUM OPINION & ORDER – PAGE 15

Plaintiffs have produced sufficient summary judgment evidence showing BCBSTX did not substantially comply with section 1133. Thus, the Court denies BCBSTX's motion for summary judgment, and grants Plaintiffs' motion for summary judgment as to this claim.

## IV. THE COURT DOES NOT REACH THE PARITY ACT ISSUE

Plaintiffs brought a second claim under the Parity Act. "Congress enacted the [Parity Act] . . . to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[6] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016) (internal citation omitted). However, the Court does not address the substantive issue of whether the Plan terms violate the Parity Act because BCBSTX's procedural violations are a threshold issue. *See Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148 (5th Cir. 2009) (addressing procedural remedies and "pretermit[ting] the necessity of reviewing [the administrator's] denial on the merits").

## V. THE COURT STAYS THE CASE AND REMANDS TO BCBSTX

Courts determine the appropriate remedy for procedural violations of ERISA case by case based on the administrative record. *Lafleur*, 563 F.3d at 158. "Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA."

---

[6] As of the date of this opinion, the Fifth Circuit has not opined on the Parity Act.

MEMORANDUM OPINION & ORDER – PAGE 16

*Id*. at 157.  "Substantive damages would be permitted only when the violations are continuous and amount to substantive harm."  *Id*. at 158 (internal citations omitted). Remand is also appropriate when an administrator determined eligibility, but not the merits of a benefits claim. *Newsom v. Reliance Standard Life Ins. Co.*, 26 F.4th 329, 336–37 (5th Cir. 2022).

Remand is not appropriate when it would allow the administrator "to make a more complete record" on the point at issue. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 n.13, *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  This principle serves three purposes: (1) to encourage parties to make its record before the case comes to federal court, (2) to prevent prolonging of the relative matter, (3) and because it is unfair to allow the administrator greater opportunity at making a record than the claimant enjoys. *Id*.; *see also Dwyer*, 115 F.4th at 652 (granting judgment for the beneficiary when procedural irregularities in a section 1133 case included the administrator never responding to a claimant's administrative appeal); *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 368 n.2 (5th Cir. 2013) (noting that a remand is unnecessary when it would be an empty formality).

Here, BCBSTX stopped its review process once it voided authorization for Innercept.  BCBSTX did not make a substantive determination nor is there an administrative record answering the substantive questions, such as medical necessity. *Cf. Newsom*, 26 F.4th at 338.  For example, the record lacks evidence on how BCBSTX was

aware that Innercept did not have the appropriate staff, and how BCBSTX reached the conclusion that Innercept was not adequately licensed.

Accordingly, the Court remands the case to BCBSTX for a full and fair review regarding the authorization of services at Innercept and any substantive denial of benefits. *See LaFleur*, 562 F.3d at 160; *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d. Cir. 2014); *Doe*, 767 F. Supp. 3d at 116–17.  As to authorization, BCBSTX is limited to expanding the record on its argument based on 24-hour staffing and the definition of RTC, but, as discussed above, BCBSTX is barred from introducing arguments regarding Innercept's licensure.  The Court retains jurisdiction and stays the case, pending further review in the event that BCBSTX affirms its denial the benefits to Plaintiffs with the benefit of a fully developed administrative record.

## CONCLUSION

Because Plaintiffs produced sufficient summary judgment evidence to show BCBSTX did not substantially comply with section 1133 of ERISA's procedural requirements, the Court grants summary judgment in favor of plaintiffs.  Accordingly, the Court denies BCBSTX's motion for summary judgment for the ERISA claims. Additionally, because section 1133's procedural violations are a threshold issue, the Court does not address Plaintiff's Parity Act claims.  Finally, the Court orders the case remanded to BCSBTX, but retains jurisdiction and stays the case, pending remand, for review if BCBSTX denies Plaintiffs' claims.

MEMORANDUM OPINION & ORDER – PAGE 18

Signed March 18, 2026.

_____
David C. Godbey
Senior United States District Judge